# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| OLIN GRIMSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:02-cv-01524-KOB-JEO |
| ) | |
| DR. MADDUX, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF OPINION

The above-styled action was filed pursuant to 42 U.S.C. § 1983 by the plaintiff, Olin Grimsley. In his complaint, the plaintiff alleges that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the St. Clair Correctional Facility in Springville, Alabama.[1] He names as defendants Dr. Andy Maddux, Dr. William Hammack, NaphCare, Inc., Nurse Jim Henson, Prison Commissioner Donal Campbell, and Warden Ralph Hooks.

In accordance with the direction of the magistrate judge, the Department of Corrections defendants and the medical defendants filed special reports. (Doc. 14, 23 & 36). Thereafter, the parties were informed that said reports would be construed as motions for summary judgment. The plaintiff was afforded an opportunity to respond to the motions for summary judgment and was instructed as to the proper manner in which to do so pursuant to the provisions of Rule 56 of the *Federal Rules of Civil Procedure*. (Doc. 30). The plaintiff filed responses. (Doc. 28 & 31).

On July 27, 2005, the magistrate judge entered a report and report and recommendation (doc. 43), in which he recommended:

---

[1] Plaintiff is now an inmate at Kilby Correctional Facility in Mt. Meigs, Alabama.

(1)  that the motions for summary judgment filed by defendant Hammack be **GRANTED**;

(2) that the motions for summary judgment filed by defendants Campbell, Hooks, NaphCare, Inc., Maddux, and Henson be **GRANTED** to the extent same pertains to the vasocath hemodialysis and initial placement of the AV graft;

(3)  that the motions for summary judgment filed by defendants Campbell and Hooks be **DENIED** to the extent the motion for summary judgment pertains to the continued placement of the AV graft, and the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against the Department of Corrections' defendants before receiving treatment, specifically defendant Campbell until June 13, 2003, and defendant Hooks until January 13, 2003;

(4)  that the motions for summary judgment by defendant Hooks, as same pertains to the claims concerning the continued placement of the AV graft, and the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against Hooks during the time period following January 13, 2003, be **GRANTED**;

(5)  that the motions for summary judgment by defendant Campbell, as same pertains to the claims concerning the continued placement of the AV graft, and the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against Campbell during the time period following June 13, 2003, be **GRANTED**; and

(6) that the motions for summary judgment filed by defendants NaphCare, Inc., Maddux, and Henson, to the same pertains to the continued placement of the AV graft, the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against said defendants, and the cancellation of the plaintiff's surgery after he signed a

consent form be **DENIED**.

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

On August 10, 2005, the plaintiff filed objections to the report and recommendation. (Doc. 46). On August 11, 2005, the Department of Corrections (DOC) defendants requested additional time to file objections to the report and recommendation. (Doc. 48). On the same date, the medical defendants filed objections (doc. 45 & 47) to the magistrate judge's report and recommendation, in which they complained that the court had previously denied the plaintiff's motion to amend his claim to assert the medical defendants were attempting to make him sign an unconscionable consent form in exchange for medical care, or in the alternative, the medical defendants requested an additional opportunity to address said claim. (Doc. 49).

The magistrate judge addressed the defendants' objections,[2] withdrew its previous order denying the plaintiff's motion to amend his complaint, and afforded the medical defendants twenty (20) days from the entry date of the order to present additional evidence pertaining to the consent form. *Id.* By the same order, the Department of Corrections' defendants were afforded additional time to file their objections to the report and recommendation, advised to address the alleged

---

[2] Medical defendants NaphCare, Inc., Maddux, and Henson filed objections to the report and recommendation, and requests for relief. (Doc. 45 & 47 (duplicated)). In it, the medical defendants contended that the magistrate judge had previously denied the plaintiff's request to amend his pleadings to add a claim concerning use of an unconscionable consent form. Based upon numerous pleadings in the record showing the medical defendants did have actual notice of the claim, and in fact, had responded defensively to the claim, the magistrate judge found it appropriate to correct the record by withdrawing an order denying a motion to supplement the complaint filed by the plaintiff (doc. 22), in which he had requested permission to amend his complaint, albeit unclear, to add that defendants Maddux, Henson, NaphCare, Inc., Hooks, and Campbell denied him his Eighth Amendment right to adequate medical care by instituting and demanding the plaintiff sign an unconscionable informed consent form, either individually or as a matter of policy. The magistrate judge then granted the motion to supplement the complaint (doc. 22), but only to the extent described in the order (doc. 49).

3

unconscionable consent form, and afforded an opportunity to file a supplemental special report/motion for summary judgment within the same time period. *Id.*

On September 12, 2005, the medical defendants filed their supplemental special report and motion for summary judgment. (Doc. 54). The DOC defendants filed a supplemental motion for summary judgment on September 22, 2005. Thereafter, the plaintiff was again notified that the supplemental special reports would be considered motions for summary judgment. (Doc. 57). The plaintiff was instructed to respond to the motion for summary judgment within twenty (20) days of the entry date of the order and was advised as to the proper manner in which to do so pursuant to Rule 56 of the *Federal Rules of Civil Procedure. See Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985). On October 24, 2005, the plaintiff filed responses to the medical defendants' objections and renewed motion for summary judgment. (Doc. 59 & 60).

## MOTION TO CONDUCT ADDITIONAL DISCOVERY

On November 7, 2005, the plaintiff also filed a letter (doc. 61) in which he asserts that he has "been unable to obtain medical records from [the] Alabama Department of Corrections. . . . I cannot properly prepa[re] my case without the medical records." Attached to this letter is an October 21, 2005, inmate request slip in which the plaintiff asks for "the medical records of Olin Grimsley #168065 as order[ed] by the court." *Id.* at 2. In the reply section of the request, the plaintiff was informed that medical records are not released to inmates, and can only be sent to lawyers and other physicians with a court order. *Id.*

The plaintiff's letter (doc. 61) shall be construed as a motion asking the court to grant permission for the plaintiff to conduct additional discovery in the form of his medical records. The plaintiff's motion is due to be denied as he has failed to state how the disclosures provided by the

defendants in their special reports are inadequate to provide the information sought by the motion for leave to conduct additional discovery. Accordingly, the plaintiff's motion to conduct additional discovery (doc. 61) is **DENIED.**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having now conducted a *de novo* review of all pleadings in this action, including the magistrate judge's report and recommendation, the objections thereto, and the additional evidence and argument proffered by the plaintiff and defendants, the court is of the opinion that the magistrate judge's findings of fact and conclusions of law as set out in his report and recommendation are due to be **ACCEPTED IN PART** and **REJECTED IN PART** as explained herein. Specifically, the magistrate judge's report is due to be and is hereby **ADOPTED** and the recommendation is **ACCEPTED** with regard to the following claims:

(1) The court **EXPRESSLY FINDS** that there are no genuine issues of material fact regarding the plaintiff's claims against defendant Hammack, and that the motion for summary judgment filed by defendant Hammack is due to be **GRANTED**. Therefore, defendant Hammack is entitled to judgment as a matter of law, and the plaintiff's claims against defendant Hammack are due to be **DISMISSED WITH PREJUDICE**.

(2) The court **EXPRESSLY FINDS** that there are no genuine issues of material fact regarding the plaintiff's claims against defendants Campbell, Hooks, NaphCare, Inc., Maddux, and Henson to the extent said claims pertain to the vasocath hemodialysis and initial placement of the AV graft. Accordingly, the motions for summary judgment filed by these defendants are due to be **GRANTED**. Therefore, defendants Campbell, Hooks, NaphCare, Inc., Maddux, and Henson are entitled to judgment as a matter of law as to the claims described in this paragraph, and said claims

are due to be **DISMISSED WITH PREJUDICE**.

(3) The court **EXPRESSLY FINDS** that there are no genuine issues of material fact regarding the plaintiff's allegations against defendant Hooks, as same pertains to the claims concerning the continued placement of the AV graft, and the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against Hooks, during the time period following January 13, 2003.  Therefore, the motion for summary judgment filed by defendant Hooks regarding the claims and time period described in this paragraph is due to be **GRANTED**, defendant Hooks is entitled to judgment as a matter of law, and said claims against defendant Hooks are due to be **DISMISSED WITH PREJUDICE**; and

(4)  The court **EXPRESSLY FINDS** that there are no genuine issues of material fact regarding the plaintiff's allegations against defendant Campbell, as same pertains to the claims concerning the continued placement of the AV graft, and the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against Campbell during the time period following June 13, 2003.  Therefore, the motion for summary judgment filed by defendant Campbell regarding the claims and time period described in this paragraph are due to be **GRANTED**, defendant Campbell is entitled to judgment as a matter of law, and said claims against defendant Campbell are due to be **DISMISSED WITH PREJUDICE**.

The remaining recommendations made by the magistrate judge are **REJECTED**, and the following findings of fact and conclusion of law are substituted therefore.

(1) The court **EXPRESSLY FINDS** that there are no genuine issues of material fact with regard to the claims against defendants Campbell and Hooks, to the extent same pertain to the continued placement of the AV graft, the refusal to remove same unless the plaintiff signed a consent

form in which he agreed to waive all rights to pursue any legal redress against the Department of Corrections' defendants before receiving treatment, specifically defendant Campbell until June 13, 2003, and defendant Hooks until January 13, 2003. Therefore, defendants Campbell and Hooks are entitled to judgment as a matter of law, their motions for summary judgment are to be **GRANTED,** and the plaintiff's claims are due to be **DISMISSED WITH PREJUDICE.**

(2) The court **EXPRESSLY FINDS** that there are no genuine issues of material fact with regard to the claims against defendants NaphCare, Inc., Maddux, and Henson, to the extent same pertains to the continued placement of the AV graft, the refusal to remove same unless the plaintiff signed a consent form in which he agreed to waive all rights to pursue any legal redress against said defendants, and the purported cancellation of the plaintiff's surgery after he signed a consent form. Therefore, defendants NaphCare, Inc., Maddux, and Henson are entitled to judgment as a matter of law, the motions for summary judgment filed said defendants are due to be **GRANTED**, and the plaintiff's claims are due to be **DISMISSED WITH PREJUDICE**.

## FACTUAL DISCUSSION

The factual and legal basis upon which this court rejects the magistrate judge's findings of fact and conclusions of law center around whether continued placement of the AV graft and the refusal to remove same constituted a serious medical need to which either the DOC defendants or medical defendants displayed deliberate indifference by denying or delaying medical treatment. Materials presented by the medical defendants in their supplemental motion for summary judgment, when viewed in conjunction with previously filed information, make it clear that the continued placement of the AV graft in the plaintiff's arm did not constitute a serious medical need for which treatment was required.

**Medical Defendants**

In the factual allegations portion of his report and recommendation, the magistrate judge proposed that, after the plaintiff had signed an unconscionable consent form regarding removal of his AV graft in June 2003,

> [s]urgery was apparently scheduled, but then cancelled due to purported scheduling problems. (*See* Exhibit O to Doc. 31). On July 28, 2003, the SPLC counsel wrote to Dr. Delong at NaphCare, and questioned why the plaintiff's surgery had been delayed. [FOOTNOTE 3]. On July 30, 2003, Dr. Delong responded by asserting that surgery was delayed because "[a]t the last minute the [AV] consultant had a conflict in scheduling, and he postponed the appointment until next month. Since there was no clinical urgency involved, we acquiesced to his rescheduling." (*See* Exhibit P to Doc. 31).
>
> Although plaintiff continued to complain of constant severe pain in his arm and request medical attention for his arm, he did not receive surgery to remove the graft. [FOOTNOTE 4]. In an August 20, 2003, letter to Dr. Simon, the plaintiff also wrote, "I have no funds . . . to buy medication at the store. I am unable to sleep at night because of the pain and numbness caused by the AV graft that you said may be against a nerve. I would appr[eci]ate it if you would give me something so I can sleep." (Exhibit B to Doc. 31).
>
> On September 4, 2003, the plaintiff spoke to Capt. Robinson, and the next week was taken to see Dr. Simon. (Doc. 31, p. 8). Plaintiff was prescribed Elavil, "a mind altering" drug, once per day to help him sleep. *Id.* However, he still suffered severe pain and numbness throughout the day. *Id.* On October 10, 2003, Dr. Simon renewed plaintiff's Elavil prescription and informed the plaintiff that NaphCare had withdrawn its surgery order. (*Id.*).
>
>> [FTN 3] *Id.* This letter is not included as part of the defendants' special report, nor does Dr. Delong address same in his affidavit
>>
>> [FTN 4]. (*See* Exhibits T and B to Doc. 31, which are letters to Dr. Simon dated August 11, 2003, and August 20, 2003, respectively). There are notes on the 6/16/03 surgical request form which read "Dr. Johnson vacation cancelled 8-1-03 8:00 a.m. . . . reset August 29," although none of the defendants explain the significance of same. (Exhibit 1 to Doc. 14, p. 21).

(Report and Recommendation, Doc. 43, pp. 11-12).

However, after careful review of the medical defendants' supplemental motion for summary judgment, it appears that the medical defendants did not cancel a surgical procedure on August 1, 2003, because a surgical consult is not synonymous with a surgical procedure. What was scheduled in July 2003,[3] was a **surgical consult** with a vascular surgeon. (Exhibit 1 to Doc. 14, p. 21; Exhibits 3 and 9 to Doc. 54).

More importantly, the plaintiff has failed to inform the court that he has been given numerous consultations with vascular surgeons since August 2003. The surgical consult with Dr. Ron C. Johnson, a partner with the Tennessee Valley Vascular Consultants, P.C., was rescheduled for August 29, 2003. (Exhibit 4 to Doc. 54). On that date, Dr. Johnson examined the plaintiff's arm. The results of Dr. Johnson's physical examination, as provided in a September 2, 2003, letter to Dr. Simon, read as follows:

> **EXAMINATION:** Mr. Grimsley is a well-developed, well-nourished, middle-aged man who appears in no distress. The examination is primarily limited to the upper extremities. There is no edema, discoloration of the upper extremities. Radial pulses are easily palpable bilaterally. The right arm shows no abnormality.
>
> Examination of the left arm reveals a raised area on the volar surface of the forearm consistent with an underlying AV graft. There is no pulse, thrill nor bruit over this. Radial pulses again are easily palpable. There is no evidence of ischemic changes in the hand, with excellent capillary refill. Motor and sensory function in the hand is normal.
>
> The skin overlying the AV graft appears normal. The incision sites at the apex of the graft and at the antecubital fossa are well healed and normal in appearance.
>
> **IMPRESSION:** I do not believe that the presence of the AV graft is causing a problem. His pain is in the ulnar distribution of the hand and the shoulder pain is unlikely related to anything going on in the forearm. (I did carry out exam for possible thoracic outlet syndrome - findings were negative.)

---

[3] The plaintiff visited with Dr. Simon on July 4, 2003, to ask about the status of his surgical consult. The plaintiff, apparently interpreting this as automatic surgery, contacted his lawyer at the Southern Poverty Law Center upon hearing his August 1, 2003, appointment had been cancelled. Thus, the lawyer's letter to Dr. Delong and his response that the prison did have the plaintiff scheduled for a surgical appointment on August 1, 2003, but the physician was going to be on vacation.

> **RECOMMENDATIONS:** I have recommended that we not excise the graft. There is no evidence of infection, but no evidence that there would be any benefit in graft removal. I explained to Mr. Grimsley that he would likely have additional symptoms after graft removal.
>
> My only other thought would be that we carry out nerve conduction studies to perhaps localize the area of apparent nerve compression. I will leave this to the discretion of the primary care physician involved.

(Exhibit 4 to Doc. 54, pp. 1-2).

On September 8, 2003, the plaintiff had an appointment with the prison physician, Dr. Simon. (Exhibit 6 to Doc. 54, p. 1). At that time, Dr. Simon explained Dr. Johnson's findings to the plaintiff. *Id*. However, the plaintiff continued to insist that he was having a lot of pain from the graft. *Id.* The plaintiff asked to be referred to "Dr. Schmidt at Medical Center East because Dr. Schmidt was willing to remove the shunt before but Mr. Grimsley was not ready to sign the papers at that time." *Id*. Dr. Simon noted in the file, "Request will be made for Dr. Schmidt." *Id*. Dr. Simon made this a part of the plaintiff's plan.

There are no other medical records pertaining to the plaintiff's medical treatment during the period of time NaphCare, Inc., was under contract with the Alabama Department of Corrections. However, on December 18, 2003, the new prison services provider, Prison Health Services (PHS), approved yet another consult with a physician (whose penmanship prevents his identification). (Exhibit 7 to Doc. 54). This physician also concurred with Dr. Johnson's assessment of the plaintiff's AV graft. *Id.* The doctor also suggested that if the plaintiff was dissatisfied with the AV graft, perhaps he should look into cosmetic surgery. *Id.*

PHS approved yet another outside consultation on July 29, 2004, this time with a vascular surgeon named Dr. Redd. (Exhibit 8 to Doc. 54, p. 2). Dr. Redd arrived at the same conclusion as Dr. Johnson and PHS's first consulting physician. *Id.* at 1. The plaintiff does not dispute these

10

factual allegations in his response to the medical defendants' motion for summary judgment. (Doc. 60).

**Department of Corrections Defendants**

In his supplemental motion for summary judgment, Warden Hooks filed an affidavit in which he admits that he personally visited with the plaintiff during a Warden's Call, and was informed by the plaintiff that he desired his AV graft to be removed. (Exhibit A to Doc. 56). Hooks advised the plaintiff to contact Dr. Hammock, and additionally took it upon himself to telephone Dr. Hammock. *Id.* at 2. Dr. Hammock advised Hooks "that the surgical removal of the graft had significant risks involved and it was safer to leave it implanted." *Id.* As a layperson, Warden Hooks believed he had to rely upon the medical opinion of the physician. *Id.*

Warden Hooks contends that he was not "aware of Dr. Hammock's or Dr. Maddux's attempt to have inmate Grimsley sign a consent form to waive any legal action if the graft was surgically removed." *Id.* Warden Hooks asserts that "according to the lawsuit," the consent form was a product of NaphCare, Inc., and not the Department of Corrections. *Id.* Finally, Warden Hooks contends that the plaintiff was transferred to Limestone Correctional Facility only one (1) week after Hooks had met the plaintiff in Warden's Call, and Hooks had no contact with the plaintiff in the interim. *Id.* Hooks denies having violated any of the plaintiff's constitutional rights. *Id.*

Defendant Campbell denies that the unconscionable consent form was a Department of Corrections form. (Exhibit B to Doc. 56). Instead, he contends the form is "a NaphCare form[,] and that he did not institute this policy, did not require the form to be signed and did not have knowledge of this form." *Id.* at 1-2. Campbell additionally argues that he has no control over medical decisions made for inmates, and did not violate the plaintiff's constitutional rights. *Id.*

The plaintiff adamantly disputes the positions taken by defendants Hooks and Campbell. (Doc. 60, pp. 3-4). The plaintiff asserts that Warden Hooks never advised him to speak with Dr. Hammock, and that in fact, the Warden told the plaintiff he would contact Dr. Hammock and advise the plaintiff of Dr. Hammock's response. *Id*. at 3. However, Warden Hooks never "got back" with him. *Id.*

The plaintiff also asserts that Warden Hooks was aware of the unconscionable consent form "because the Alabama Department of Corrections has a similar waiver of its own. . . . [In any event,] Warden Hooks knew that this was standard procedure done by and for any medical treatment 're' surgical procedures done by its contract staff and employees." *Id.* at 4. The plaintiff extends this responsibility to Commissioner Campbell because "he . . . inherited all responsibility from former Commissioner Michael Haley." *Id.* The plaintiff argues that although Campbell attests he did not institute the policy, Campbell "has not made an effort to remove this policy from the Department of Corrections." *Id*.

## LEGAL DISCUSSION

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct 285, 50 L. Ed. 2d 251 (1976). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864, 98 S. Ct. 195, 54 L. Ed. 2d 138 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Brossard*, 590 F.2d 105 (5th Cir. 1979). As stated in *Estelle, supra*, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an

accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). *See also Estelle v. Gamble, supra*, at 106-08.

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit noted in *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995):

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. "A doctor's decision to take an easier and less efficacious course of treatment" also constitutes deliberate indifference. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference. (citations omitted).

The Eleventh Circuit also held in *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.), *vacated*, 931 F.2d 711 (11th Cir. 1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191(11th Cir. 1994)):

> The standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act.

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186 ("cases

13

stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem"); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical treatment can violate the Eighth Amendment, *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.), *per curiam*, *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).[4]

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187-88. A medical need is considered serious when delay results in an inmate's suffering "a lifelong handicap or permanent loss." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill, supra*, at 1188. Further, whether the length of the delay establishes deliberate indifference "depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994). Therefore, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Even when all of the allegations are viewed in a light most favorable to the plaintiff, it is apparent that his AV graft does not constitute a serious medical need. The plaintiff has been

---

[4] Reiterated in *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).

examined by numerous physicians, nephrologists, and vascular surgeons. All them have rendered opinions that it is not medically necessary to remove the AV Graft, and that in fact, its removal could cause the plaintiff additional suffering. The plaintiff does not deny that these opinions were rendered and has proffered no medical evidence that would create any genuine disputed issue of material fact concerning this element of his claim. That it is the plaintiff's opinion his AV graft is the cause of his problems and should be removed completely fails to support an Eighth Amendment claim at this stage of the proceedings, in light of the evidence presented. Because the plaintiff does not suffer from a serious medical need, it cannot be argued that any medical defendant was deliberately indifferent to his needs.

Were it not for the fact that the plaintiff has failed to provide sufficient evidence that he suffered from a serious medical need, the court would have found that he had created a genuine issue of disputed facts with regard to his claims against Department of Corrections defendants, Warden Hooks and Commissioner Campbell. Evidence presented by the plaintiff clearly shows that the unconscionable consent form at issue has as its heading, "Department of Corrections" and refers to the Department of Corrections in the body of same. However, because the plaintiff has not shown he was suffering from a serious medical need such that any delay or denial of medical treatment would be indicative of deliberate indifference, his claims against Warden Hooks and Commissioner Campbell fail, even if the court presumes Hooks and Campbell were aware of and responsible for the execution and implementation of an unconscionable consent form.

## FINAL CONCLUSION

For the foregoing reasons, the court **EXPRESSLY FINDS** that there are no genuine issues of material fact regarding any of the plaintiff's claims against all the defendants, and that the motions

for summary judgment filed by all the defendants are due to be **GRANTED**.  Therefore, all the defendants are entitled to judgment as a matter of law, and the plaintiff's claims against all the defendants are due to be **DISMISSED WITH PREJUDICE**.

An appropriate order will be entered.

**DATED**, this 23rd day of February, 2006.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE